UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MINNIE ROBINSON,

                    Plaintiff,        08-CV-4747 (RJD)

   - against -                     MEMORANDUM
                                      OPINION AND ORDER
MICHAEL ASTRUE, Commissioner of Social
Security,

                    Defendants.
------------------------------------X
DEARIE, Chief Judge.

Minnie Robinson ("plaintiff") commenced this action against Michael J. Astrue, the Commissioner of Social Security ("defendant" or "Commissioner") on November 21, 2008, seeking review of defendant's decision denying her application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act. Plaintiff claims that she is entitled to receive SSI benefits due to severe medically determinable impairments, which she alleges prevent her from performing any work. The parties' cross move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. §§ 405(g) and 1383(c)(3)[1]. For the reasons set forth below, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

Plaintiff was born on February 1, 1965 and attended school

---

[1] 42 U.S.C. § 405(g) and 1383(c)(3) provide for judicial review in the district court of final decisions made by the Commissioner of Social Security.

through the 11th or 12th grade. Administrative Record ("Tr.") at 76, 283, 514, 516, 540. From 1989 to 2004 she worked as a home attendant, where her job duties included bathing patients, cleaning their houses and cooking for them. Tr. 72, 517-19. Plaintiff stopped working because she was experiencing knee pain, toe pain and pain in her lower back and upper neck area, and "wasn't able to tend to [the patient] like she needed." Tr. 520-21, 540. She applied for disability benefits in September 2004. Plaintiff currently lives in Jamaica, Queens, in New York, along with her disabled adult son, adult daughter and two-year-old grandchild. Tr. 283, 514, 540.

On August 4, 2008, ALJ Hazel C. Strauss denied plaintiff's claim for disability benefits. The ALJ found that plaintiff suffered from the severe impairments of obesity, right knee degenerative joint disease and cervical disc disease, and that plaintiff was unable to perform her past relevant work as a home attendant.[2] However, the ALJ found plaintiff's assertions of chronic pain to be "not entirely credible." Tr. at 31. At the hearing, the ALJ asked a vocational expert whether there were any jobs that could be performed by an individual if the following requirements were assumed: the work may be up to the light

---

[2] The ALJ additionally concluded that plaintiff suffered from depression, but found without input from any professional that the depression did not qualify as "severe" because it did not cause more than minimal limitation in the claimant's ability to perform basic work activities. Tr. 27-28.

exertion level, it must have an option to sit or stand as needed, the individual can lift up to 20 pounds occasionally, ten pounds frequently, and can sit six out of eight hours per day or stand and walk six out of eight hours a day, the job must require no more than occasional motion of the head/neck from side to side, and the individual can perform work using her right dominant upper extremity no more than occasionally. Tr. at 565, 568. The vocational expert testified that two jobs existed that could be performed by an individual who was subject to the listed limitations: "Surveillance System Monitor," and "Telephone Quotation Clerk," however, the vocational expert expressed uncertainty that the former position, considered alone, existed in significant numbers in the national economy. Relying on the vocational expert's testimony, the ALJ concluded that jobs existed in significant numbers in the national economy for which plaintiff retained the residual functional capacity to perform. Accordingly, the ALJ denied plaintiff's claim for SSI benefits.

I conclude that the ALJ's opinion contains four errors warranting remand. *First*, in concluding that plaintiff's claims of pain were not credible, the ALJ relied on the fact that plaintiff's doctors were "apparently skeptical" of her pain. Tr. 31. The ALJ reached that conclusion solely based on notes in plaintiff's psychological records which record plaintiff's own statement to her therapist, complaining that after numerous tests

her doctors "can find no reason for her chronic pain." Tr. 31 (citing therapist's notes at Tr. 316-17).[3] However, plaintiff's having told her therapist that her doctors hadn't found the cause of her pain does not support the conclusion that the physicians doubted the pain was real.[4] Accordingly, remand is warranted because, in discounting plaintiff's complaints of pain, the ALJ reached a conclusion not substantially supported by the evidence in the record.

*Second*, in concluding that plaintiff retained the residual functional capacity to perform the job of "telephone quotation clerk," the ALJ erred in crediting the testimony of a vocational expert without inquiring whether that testimony conflicted with the job database "Selected Characteristics of Occupations" ("SCO"). Pursuant to Social Security Ruling 00-4p, an ALJ must inquire as to whether vocational expert testimony conflicts with the SCO or Dictionary of Occupational Titles ("DOT") before relying on such testimony. See SSR 00-4P, 2000 WL 1898704 (December 4, 2000). When there is an apparent unresolved

---

[3] The relevant notes by plaintiff's therapist at the Advanced Center for Psychotherapy state the following: "Patient said she had a nice quiet holiday. . . . She said all the doctors she has seen still don't know why she has so much pain and on the 24th she has to go for more tests." Tr. 316 (Jan. 3, 2007 session). "Patient said she has gone for all the tests and so far the doctors can find no reason for her chronic pain." Tr. 317 (Feb. 7, 2007 session).

[4] At oral argument, counsel for defendant speculated that the ALJ's conclusion might have been based on plaintiff's therapist's use of quotation marks as an expression of sarcasm or disbelief in recording plaintiff's complaint of pain. However, the pages of plaintiff's psychological records relied on by the ALJ on this point do not contain **any** quotation marks.

conflict between vocational expert evidence and the DOT or SCO, the adjudicator "must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.* Although the SCO lists the job of telephone quotation clerk as requiring "frequent"[5] reaching, handling and fingering, at the March 6, 2008 hearing before the ALJ, the vocational expert testified that plaintiff could perform that job despite having a limitation to only *occasional* use of her right dominant upper extremity. Tr. 568-70. Neither the vocational expert nor the ALJ addressed the apparent conflict between the SCO and the vocational expert's testimony.[6] Remand is warranted because, in erroneously concluding that the vocational expert's testimony was consistent with the SCO, Tr. 33, the ALJ failed to inquire

---

[5] "Frequent" is defined by the DOT as occurring from 1/3 to 2/3 of the time, while "occasional" refers to activity that occurs up to 1/3 of the time. SSR 83-10 (PPS-101), 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at *5-6 (1983).

[6] Defendant contends that because plaintiff retained unrestricted use of her left upper extremity, the vocational expert's testimony was not in conflict with the SCO. However, the assumption that the job of telephone quotation clerk does not require the use of both hands is found nowhere in the record, and is not supported by the Commissioner's policy guidelines. *See* SSR 96-9P, 1996 WL 374185, at *8 (July 2, 1996) (stating "most unskilled sedentary jobs require the use of both hands and the fingers; i.e. bilateral manual dexterity," and "any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.")

whether there was a reasonable explanation for that discrepancy.

*Third*, in concluding that plaintiff could perform the job of "Security Systems Monitor," the ALJ misinterpreted the vocational expert as testifying that there were 200,000 surveillance system monitor jobs locally and 300,000 nationally. The vocation expert testified in fact that there were 200 such jobs locally and 3,000 nationally, and expressed scepticism that the number of such jobs would qualify as "significant." See 20 C.F.R. §§ 416.912 & 416.960(c).[7] If on remand the ALJ determines that plaintiff cannot perform the job of telephone quotation clerk, the ALJ must consider whether the position of surveillance systems monitor, with just 200 jobs locally and 3,000 nationally, would qualify as significant under 20 C.F.R. § 416.960(c).[8]

---

[7] The relevant portion of the transcript states:
Q. So are there any other sedentary jobs that can be --
A. Nothing of significant numbers as a surveillance monitor. That DOT code is 379--
Q. Wait a second. So the surveillance system monitor is a sedentary job that could be performed?
A. Yes. The numbers are not (INAUDIBLE).
Q. Well let me -
A. If you want it I can give it to you.
Q. Yes. Well, let me see what the numbers are. What is the code on this?
A. The DOT code is 379.367-010. The SVP is two, unskilled at the sedentary level. There are 200 jobs in the region and 3,000 in the national economy.

[8] I note that while the Social Security Act does not specify any precise formula for determining whether a particular number of jobs is sufficiently "significant," a number of courts have suggested that the above figures would not qualify as sufficiently significant. See, e.g., *Franklin v. Apfel*, 8 F. Supp. 2d 227 (W.D.N.Y. 1998) (expressing skepticism that 480 jobs as a security system monitor available in the Buffalo region, and approximately 80,000 such jobs nationally were sufficiently significant); (*Jimenez v. Shalala*, 879 F. Supp. 1069 (D. Colo. 1995) ("200-250 jobs spread across Colorado is not a significant number. The lowest specific number of jobs I found a court considered a significant number was 500."). But see *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) (finding 650 to 900 jobs sufficiently significant); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (upholding ALJ's finding that claimant could perform other work where

*Fourth*, in concluding that plaintiff's depression did not cause any impairment in her ability to work, the ALJ disregarded evidence in the record, and failed to adequately develop the record, regarding plaintiff's psychological condition. *See Vega v. Astrue*, No. 08-CV-1525, 2009 WL 961930, at *3 (S.D.N.Y. April 6, 2009) ("[I]t is well settled that the ALJ has an affirmative duty to develop the record in a disability benefits case and that remand is appropriate where this duty is not discharged.").

After reviewing the evidence concerning plaintiff's psychological impairment, the ALJ concluded that plaintiff's depression (1) was not severe; and (2) presented no limitation to her residual functional capacity. Tr. 27-32. In particular, the ALJ concluded that plaintiff suffered from mild limitation to her "concentration, persistence or pace," but that there was "no evidence of reduced ability to concentrate or persist in a work environment." Tr. 28. However, the record contains considerable evidence that plaintiff suffered from reduced concentration and energy levels that could cause a limitation in her residual capacity to perform work.[9] Further, the ALJ failed to develop

---

vocational expert identified 174 jobs in local economy, 1,600 in the state, and 80,000 such jobs nationwide). *Cf. Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997) (finding existence of 200 jobs in state and 10,000 in national economy sufficiently significant, but noting figures were merely representative of a larger category of jobs that plaintiff could perform).

[9] For instance, notes by Dr. Jean Bart, the attending psychiatrist who conducted plaintiff's initial interview at the Advanced Center for Psychotherapy state that plaintiff "appeared drowsy," her "psychomotor activity was slow," plaintiff's "concentration/attention span was poor," and that she "sleeps a lot." Tr. 276-78. In December 2007 plaintiff was

the record by seeking input from a physician or psychologist regarding whether plaintiff's depression qualified as severe, or whether, even if not severe, the depression impaired plaintiff's residual functional capacity to perform work. While I render no conclusion regarding those questions, the record evidence regarding plaintiff's psychological condition should have prompted the ALJ to pursue additional information in order to sufficiently develop the record. If on remand the ALJ determines that plaintiff retains the residual functional capacity to perform work, the ALJ should determine with the assistance of competent consultative professional whether plaintiff's depression causes any limitation to her ability to perform work, and present those limitations to a vocational expert so that the expert may render an informed opinion as to whether any jobs exist in significant numbers that plaintiff can perform.

---

discharged from therapy because of her poor attendance, partially attributable to plaintiff's feeling so fatigued that she couldn't get out of bed. Tr. 272, 529. Plaintiff's medical records also note "daytime sleepiness." Tr. 367.

For the reasons set forth above, this case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to transmit a copy of the within to all parties and the Commissioner.

SO ORDERED

Dated: Brooklyn, New York
December 8, 2009

s/ Judge Raymond J. Dearie
United States District Judge